INSURANCE CO. OF NORTH AMERICA v. McCOACH, Internal Revenue Collector.

(District Court, E. D. Pennsylvania.   December 7, 1914.)

No. 2402, Dec. Sess. 1912.

1. INTERNAL REVENUE (§ 9*)—CORPORATION EXCISE TAX—COMPUTATION.

In computing the excise tax due from an insurance corporation, it was improper to include, in the gross income accrued, but unpaid, interest on investments represented by unmatured interest coupons payable in the future.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13-28; Dec. Dig. § 9.*]

2. INTERNAL REVENUE (§ 9*)—CORPORATION EXCISE TAX—"INSURANCE RESERVE"—"RESERVE FUND"—"RESERVE."

Where the insurance laws of the state and the forms of return prepared by the State Insurance Department required an insurance company to return as liabilities the net amount of its unpaid losses or claims and the unearned premiums on unmatured policies, the aggregate of these sums, technically known as an "insurance reserve," and the moneys thus

carried, known as "reserve funds," constituted the "reserve" required by law to be maintained, within Act Cong. Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (Comp. St. 1913, §§ 6300–6307), imposing an excise tax on corporations, and authorizing a deduction from the gross income of the net addition required by law to be made to the reserve funds of insurance companies.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*

For other definitions, see Words and Phrases, First and Second Series, Reserve, Reserve Fund.]

3. INTERNAL REVENUE (§ 9*)—CORPORATION EXCISE TAX—COMPUTATION.

Where an insurance company, in addition to the reserve required by law to be maintained to meet its unpaid losses and claims and its liabilities on unmatured policies, measured by the unearned premiums thereon, had a surplus of several million dollars, it was not entitled, in the computation of its excise tax, to a deduction from its gross income of the excess of its losses over those for the preceding year, though a greater reserve was thereby made necessary, as, in view of its surplus, it was not required to add that amount to its reserve, but could have paid it out in dividends had it so decided.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*]

At Law. Action by the Insurance Company of North America against William McCoach, collector of internal revenue. Judgment for plaintiff for a part of the amount sued for.

B. Franklin Pepper and George Wharton Pepper, both of Philadelphia, Pa., for plaintiff.

Francis Fisher Kane, U. S. Atty., of Philadelphia, Pa., and Edward S. Kremp, Asst. U. S. Atty., of Reading, Pa., for defendant.

DICKINSON, District Judge. This case was tried before the court without the intervention of a jury, under the provisions of sections 649 and 700, Revised Statutes (Comp. St. 1913, §§ 1587, 1668). The evidential facts are not in controversy, and the case partakes almost of the nature of a case stated. An excise tax, under the provisions of the act of Congress of August 5, 1909, was assessed against and paid by the plaintiff. The payment, so far as affects the questions involved, was accompanied by the usual formalities which give the plaintiff the right to recover in this form of action the amount claimed, if the tax was illegally exacted. All this is conceded by the defendant, and the necessary facts and conclusions of law are found to this end, and there is no need to incorporate them in formal special findings. The question, therefore, resolves itself into one of the liability of the plaintiff to the payment of the tax. The only disputable question is further really narrowed to one of the proper application of the latter part of the second of the five classes of deductions allowed by the act of Congress to be made from the "gross income" of the plaintiff in order to determine the taxable "net income." The real question is embraced in the phrase "the net addition, if any, required by law to be made to reserve funds" of insurance companies.

[1] There is, however, another question which may be disposed of before discussing that which we have thus characterized as the real

question. This first question is this: The collector included in the "gross income" of the company, and thereby taxed as income, certain sums of accrued, but as yet unpaid, interest on investments held by the plaintiff. This accrued interest was represented by unmatured interest coupons payable in the future. The income to which this dispute applies was not strictly of this character, but this is fairly representative of all of it, and admittedly presents the point to be ruled. No discussion of it is called for, because since the tax was imposed the very question raised has been decided in favor of the plaintiff for us. Mutual Benefit Life Ins. Co. v. Herold (D. C.) 198 Fed. 199; Herold v. Mutual Ben. Life Ins. Co., 201 Fed. 918, 120 C. C. A. 256; Id., 231 U. S. 755, 34 Sup. Ct. 323, 58 L. Ed. 468. The plaintiff is therefore entitled to judgment for the tax thus improperly imposed.

[2, 3] The remaining question is a difficult one to compress into a simple statement. It can most clearly be presented thus: The plaintiff was incorporated by a special act of assembly of the commonwealth of Pennsylvania, approved April 14, 1794 (3 Smith's Laws, p. 129). It is subject to the general insurance laws of the state. These provide for the establishment of an insurance department, which is under the charge of an insurance commissioner, upon whom has been conferred drastic powers of control over all companies doing an insurance business in the state. Every such company is "required by law" to submit itself to the regulations of this department under penalty of having all its business transactions in the state suspended. The main and real purpose is to make clear the solvency of the companies by making such returns of their financial condition as will show their capital to be unimpaired further than is tolerated by law. To this end they are required to return as liabilities all the obligations called for by such forms of returns as are prepared for the purpose by the insurance department. Among the obligations so required to be returned as liabilities is the net amount of the company's unpaid losses or claims against it and the amount of the premiums called for by its policies so far as they are then unearned. These sums are reserves. Every calling comes to have its own terminology. As part of this, the same word may come to have a special meaning in particular callings. This is true of the word "reserve," which, it will be remembered, is the word used in the act of Congress. The policy obligations of an insurance company are unique in that they are contingent, being contracts of indemnity only. In a statement of the financial condition of a company, to treat these contingent obligations as an absolute liability would be to doom every insurance company, no matter how strong financially, to technical insolvency. They are none the less obligations, and in a very practical sense liabilities. The real question is, to what extent? If no losses have been incurred, the company may reinsure or cancel its policies, and the amount of the unearned premiums therefore measures very fairly the money liability. Losses, however, may have been incurred on some policies. They may therefore be classified, and we have among these latter policies those under which no proofs of loss have been submitted, those under which proofs have been submitted, and those upon which losses have been adjusted, as

well as admitted and disputed claims. What may be termed the "actual liability" may thus be measured with substantial accuracy. The aggregate of these sums must be carried as a liability, and thus becomes technically known as an "insurance reserve," and the moneys thus carried as "reserve funds." If the company carries any insurance against such policies, this is allowed to be deducted, and we have the "net amount of losses and claims" which, together with the "reinsurance reserve" or unearned premiums, constitutes the "insurance reserve" "required by law" to be maintained by the company. In the forms of returns as required to be made by this plaintiff for the years 1909, 1910, and 1911 all these items are called for and set forth in detail, and they constituted, or rather were included, as part of "the reserve required by law" to be maintained. For the several years they and the surplus of the plaintiff company were as follows:

| 1909 | Reserve | ................................................. | $7,796,094 92 |
| | Surplus | ................................................. | 2,577,235 60 |
| | Net | ................................................. | $5,218,859 32 |
| 1910 | Reserve | ................................................. | $8,327,981 49 |
| | Surplus | ................................................. | 3,712,333 93 |
| | Net | ................................................. | $4,615,597 56 |
| 1911 | Reserve | ................................................. | $8,908,377 36 |
| | Surplus | ................................................. | 4,202,404 41 |
| | Net | ................................................. | $4,705,972 95 |

The real surplus of a corporation is, of course, the difference between the aggregate value of all its assets and the sum of all its liabilities, including capital stock. This difference may be called surplus, undivided profits, contingent fund, or by any other name. In a real and substantial sense, it is a reserve. Broadly speaking, it is not required to be maintained, but may be paid out in dividends, or otherwise distributed among the stockholders. Ordinarily no part of it is embraced in the sum total of liabilities. When, however, something is added to the sum of liabilities which is not owing by the company, this addition then becomes a reserve. It is in this sense that moneys set aside to meet possible liabilities are "reserves," and if required by law to be thus carried, they are "additions required by law to be made to reserve funds."

Let us pause here to bring into the discussion the act of Congress. It was clearly the purpose of Congress to impose this excise tax, based upon the net income of corporations received during the year. To ascertain this, the gross income is taken, reduced only by certain specified deductions. The general purpose of the act is to make the statement of income a statement of cash receipts and disbursements. Actual payment is made the test of deductions. It was recognized, however, that in certain instances the money might be as effectually withdrawn from available income as if actually paid away. The allowance of the deduction embraced in the phrase already quoted is one. This company did add to its reserve by including in its liabilities unpaid losses and claims and unearned premiums. The sums thus added have been stipulated, and are found as stipulated. The losses for 1911 in fact ex-

ceeded those of 1910 by $88,600, and the latter exceeded 1909 by $222,250. The question, therefore, is, Were these sums net additions required by law to be made to the reserve fund? If the company had been without surplus, then the amount of losses must have been reserved for 1909 and for 1910, and as the latter exceeded the former by $222,250, that much additional would have been so required. As, however, the company in 1909 had a large surplus, and therefore a much larger reserve than was required by law, there was no requirement to make any "additions" to it in 1910. In other words, the company was not required to add this $222,250 to its reserve. It could have paid it out in dividends had it so decided, and its entire capital have been left unimpaired with millions to spare. The same is true of 1911, when the company had a surplus of $4,000,000 and a contingent fund of $202,404.41. It is evident, therefore, there was no requirement of law to add $88,600 to the reserve the company already had. Moreover, under the law of Pennsylvania, the capital is not required to show clear and unimpaired above the sum of liabilities, including the items under discussion. There is a leeway of 20 per cent. allowed. What Congress had in mind was something more than a mere bookkeeping fact. What the act of Congress says is that when a company is financially so situated that a part of its yearly income is not available for corporate use, but is required to be set aside and placed beyond the reach of the company as absolutely as if it had actually been paid away, then it may be deducted just as if it had been so paid, but not otherwise. The stipulated sums of $151,750 for the year 1910 and $113,000 for the year 1911 are taxable, and were properly not deducted from the gross incomes for those years, respectively.

There is no need for special findings of fact. These general findings are sufficient.

The conclusions of law reached are as follows:

### Conclusions of Law.

1. The income sum of $8,303.41 on which an excise tax was assessed and collected for the year 1910 was not taxable as income.

2. The income sum of $8,638.83 on which the tax was assessed and paid for the year 1911 was not taxable as income.

3. The sum of $151,750 was properly not deducted from the taxable income for the year 1910.

4. The sum of $113,000 was properly not deducted from taxable income for the year 1911.

5. The plaintiff is entitled to judgment for the sum of $192.73, made up as follows:

| | |
|---|---:|
| 1910 tax payment | $ 83 03 |
| Interest from August 22, 1912 | 11 43 |
| 1911 tax payment | 86 38 |
| Interest from August 22, 1912 | 11 89 |
| Amount of judgment | $192 73 |

—together with costs of suit.

This judgment is accordingly entered in favor of the plaintiff and against defendant for $192.73, with costs of suit.