Booth, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
The petition in this case alleges certain facts upon which the claimant company rest a contention for the refund of certain excise and income taxes said to have been illegally collected under section 38 of the act of August 5, 1909, 36 Stat. L., 112, and section 2, division G, of the act of October 3, 1913, 38 Stat. L., 172. The amount claimed is $16,306.16.
Section 38 of the act of August 5, 1909, provides as follows :
“ Sec. 38. That every corporation, joint-stock company, or association, organized for profit and having a capital stock represented by shares, and every insurance company now or hereafter organized under the laws of the United States or of any State or Territory of the United States or under the acts of Congress applicable to Alaska or the District of Columbia, or now or hereafter organized under the laws of any foreign country and engaged in business in any State or Territory of the United States or in Alaska or in the District of Columbia, shall be subject to pay annually a special excise tax with respect to the carrying on or doing of busi *208 ness by such corporation, joint-stock company or association, or insurance company, equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations, joint-stock company or association, or insurance companies, subject to the tax hereby imposed.”
Division G of the act of October 3, 1913, provides as follows:
“ (c) The tax herein imposed shall be computed upon its entire net income accrued within each preceding calendar year ending December thirty-first: Provided, however, That for the year ending December thirty-one, nineteen hundred and thirteen, said tax shall be imposed upon its entire net income accrued within that portion of said year from March first to December thirty-first, both dates inclusive, to be ascertained by taking five-sixths of its entire net income for said calendar year.”
In pursuance of the foregoing enactments the claimant, a casualty insurance company, organized and incorporated under the laws of the State of Maryland, made its return to the Commissioner of Internal Revenue for the years 1909 to 1912, inclusive. The commissioner declined to accede in all respects to the returns as made, insisting upon various amendments of the same, which, as he claimed, more clearly reflected the net income of the corporation for taxable purposes. The claimant company paid the additional taxes assessed under the amended returns under protest, and herein seeks to establish a misconstruction of the law under which the same were assessed and collected.
Without discussing the details of the various returns as they appear in the findings, the case may be disposed of as to the legal propositions involved by taking them up in the order adopted by the parties in the case in their briefs.
The original returns made by the company for each year covered by the petition in this case, except for the year 1913, was made upon a basis of cash received as distinguished from the total amount of business done on paper, i. <?., a written basis. The commissioner amended each return so made to comply with a return made by the company to the State in *209 surance department of the State of Maryland, wherein it listed its total business transactions, both cash received in premiums and premiums due on insurance written, but not received at the home office of the company during the calendar year. The claimant company now contends that its original returns made upon a cash basis conform to the excise law, and upon them alone was the tax to be assessed and collected.
The language of the taxing act clearly imports an intent to tax the entire net income, with certain deductions, received by the company from all sources during the calendar year. While the tax itself is an excise tax, imposed upon the privilege of doing business in a corporate capacity, the amount of the tax is measured by the net income received from all sources during the time stated. Flint v. Stone Tracy Co., 220 U. S., 108.
The word “ income,” as used in revenue legislation, has a settled legal meaning. The courts have uniformly construed it to include only the receipt of actual cash as opposed to contemplated revenue due but unpaid, unless a contrary purpose is manifest from the language of the statute. What is taxed by the terms of the foregoing statutes is “ net income received,” not income accruing or accrued which has not been received and portions of which may never be received. While the phrases “ income received ” and “ income accrued ” are frequently used in the same statute, the courts have not departed, unless it expressly appears otherwise, from a construction of the law in accord with an intention to reach the actual and not the potential income of the corporation. In the income-taxing act of 1918, 38 Stat. L., 172, the two preceding phrases are employed; in fact, the act of 1913, in speaking of income as applied to insurance companies and domestic corporations, uses the above phrases as follows: “ Income arising or accruing,” “ income received,” and “ income accrued.” Doubtless it was the intention of Congress in legislation of this character to employ terms of sufficient comprehension to reach the actual income of the corporation by foreclosing any possible avenue of escape, but it can hardly be said that in so doing an intention prevailed to tax *210 that which did not actually exist, except on paper, as income accrued during the taxing period. One can not be said to receive an income of defined proportions until he balances receipts and deductions at the end of a stated period and ascertains not what is due but what has been actually received. The assets and liabilities of a corporation may be measured by a different rule of accounting, but income as defined by the courts means, as said in United States v. Schillinger, 14 Blatchf., 71,“ In the absence of any special law to the contrary, income must be taken to mean money, and not the expectation of receiving it or the right to receive it at a future time.”
In Mutual Benefit Life Ins. Co. v. Herold, 198 Fed., 199, Judge Cross, in the United States District Court for New Jersey, had before him an excise case in which this identical question was directly involved. After reviewing at length the general intendment of taxing statutes, a part of his discussion with reference to this question is in the following-language :
“ That law provides that the tax is to be—
“ ‘One per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amount received by it as dividends' upon stock of other corporations, joint-stock companies or associations, or insurance companies, subject to the tax hereby imposed.’
“ This language seems clearly to indicate that the net income, which is the measure of taxation, means what has actually been received, and not that which, although due, has not been received, but its payment for some reason deferred or postponed. Furthermore, an examination of the act shows that the net income is to be ascertained by deducting from the gross income:
“(1) ‘All the ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and properties.’
“(2) ‘All losses actually sustained within the year] etc.; ‘ also the sums other than dividends paid within the year on policy and annuity contracts, and the net addition, if any, required by law to be made within the year to reserve funds.’
“(3) ‘Interest actually paid within the year on its bonded and other indebtedness,’ etc., ‘and in the case of a bank, *211 banking association, or trust company, all interest actually paid by it within the year on deposit.’
“ (4) ‘Also all sums paid by it within the year for taxes,’ etc.
“(5) ‘All amounts received by it within the year as dividends upon stock of other corporations, joint-stock companies or associations, or insurance companies, subject to the tax hereby imposed.’
“ Since, then, the language of the act is explicit in permitting- only such deductions from the gross income as were actually paid during the current year, it would be strange, indeed, if on the opposite side of the account the company were charged with what it had not received during- the curl-ent year. No reason appears or has been suggested for so radical and unwarranted a departure. Furthermore, the word " income ’ means, as already shown, that which has come in, and not that -which might have come in, but did not. If expenditures means what has been paid out, or outgoes, then income means what has come in, or receipts. The matter, however, does nor rest entirely upon arbitrary statement, since there are a number of cases which throw light upon the question.”
It is true, as observed by the defendants, that the above case concerned a life and not a casualty insurance company, and that the decision rested to some extent upon a belief that the State insurance department required an annual report upon a cash basis. Nevertheless the distinction is not of such importance as to destroy the reasoning. The ascertainment of the taxable income is obviously not affected by the difference in the character of the business conducted, nor by what is left to regulation by the laws of the different States. The law now under consideration imposes a tax by express provisions, and unless “income received” can be construed to include prospective gains, sometimes secured, sometimes unsecured, it must be limited, as its terms imply, to what is certain, easily known, and easily computed.
The Herold case, supra, came before the Circuit Court of Appeals, 201 Fed., 918. The question referred to above was not discussed by the appelate court; the opinion considers but a single question other than the above. The decision of the district court was affirmed, however, the parties seemingly being content with the decision with respect to this particu *212 lar issue, as it was not raised upon appeal. Tire rule was followed in Insurance Company of North America v. McCoach, 218 Fed., 905; Connecticut Mutual Life Ins. Co. v. Eaton, 218 Fed., 188 and 223. The defendants have cited no decisions to the contrary and, doubtless, it can not be done.
The record reveals a state of facts apropos of this particular contention which conclusively show that the claimant company in its original return did not report its actual cash income for the calendar year 1909. A system of accounting adopted by the company allowed a period of two months to local agencies in which to report their cash premium receipts to the home office. Such a system, in view of the rules and regulations of the Commissioner of Internal Revenue, does not “clearly reflect” the company’s income, for it is admitted that some and perhaps the greater portion of premiums listed in the original return as due but unpaid have been paid to the company’s agents. A payment to the agent is payment to the principal, and the company under the rules of the commissioner has until March 1 following the close of the calendar year to make its return. While under the provisions of the act of September 8, 1916, 39 Stat. L., 771, a corporation’s system of bookkeeping is not to be disturbed, still it is apparent from the language of the section so providing that the system adopted must be such as to “clearly reflect its income.” The company in the present case is obligated under the law to report in full the total sums received in cash, both the amounts received at the home office and those paid to its lawful agencies during the calendar year. Any other course, no matter how convenient, would fail in firmly establishing the dividing line between sums due and unpaid and actual income received during the year. It is somewhat inconsistent to claim a right under the cash basis of returns when it is apparent from the return itself that it embodies both the cash and written bases. The two systems can not overlap. The accounting must distinctly disclose the gross income from all sources.
The commissioner in his final assessment collected the excise tax for 1909 on a basis of $643,162.08 premiums written but not reported to the company paid in 1909. In reach *213 ing this conclusion he-excepted as part of the cash income of the company the sum of $584,164.18 premiums written in 1908 but paid to the company in 1909, as found in the company’s original return, imposing by his amended return made to the company an additional tax based upon the difference between the two sums mentioned above, i. e., $58,-997.90. In this respect we think he was in error. The return of the company should have disclosed all cash payments of premiums made during the calendar year.
The next contention is more perplexing and necessarily involves the application by the commissioner of a strict rule of construction of the taxing law. A deduction is allowed insurance companies of “the net addition, if any, required by law to be made within the year to reserve funds.” This language standing alone is apparently free from ambiguity. The intent of the law is not difficult to perceive. Its practical administration, however, becomes difficult because of a diversity of opinion as to just what sums are to be included as coming under the law within the reserve funds. Claimant company contends that under the requirement of the laws of the various States it is required to maintain a separate reserve fund of sufficient amount to protect the policyholder, creditor, and claimant; in other words, the reserve fund must be coextensive with the company’s liabilities. That the company did not always entertain this conception of its rights is manifest from its returns, for during the early years of the law’s operation it did not include items it subsequently claimed as coming within this category. The department in administering the law adopted as a uniform basis for reserve deduction “the reserve of the State in which the reserve requirements are the greatest.” The reserve required by the various States of the Union is, of course, a statutory provision setting forth the conditions upon which foreign corporations and insurance companies may transact business within the State. These statutes, like laws of similar character, provide a separate department with a commissioner in charge to administer the law. The commissioner in so doing promulgates rules and regulations which in his view meet the requirements of the statute, but *214 vary in the different States as to the items of amounts which go to make np the reserve funds. Legal reserve funds are those sums required by State laws to be maintained by insurance companies to secure its liabilities upon policies written. They are accumulated out of the income of the company and are in reality simply its invested assets, approved securities sufficient in amount to meet the liabilities of the company. An example is found in the unearned premium reserve; the amount required under this item does not cover the full liability of the company upon insurance written up to July 1. It simply requires a reservation of a sufficient sum to pay the premiums of reinsurance upon the enforceable policies then extant in the event the company should go out of business or to return the unearned portion of the premiums paid in the event of bankruptcy, cancellation of policy, etc. This reserve, as we understand the situation, is not intended to cover the company’s liability with respect to the insurance written, but is a fund providing against loss in case of the happening of a certain contingency. While, of course, it naturally affects the solvency of the company, for if for any reason it is incapable of maintaining the same, its business may be foreclosed, yet it is not in its essential characteristics a provision against insolvency. It in nowise secures other creditors or claimants of the company. The computation of the amount is ascertained upon a hypothetical basis, and the rules governing it are arbitrary. The laws of the States, probably without exception, require the maintenance of this reserve, and insurance companies for years have recognized the wisdom of its existence.
Loss and unpaid liability claims afford an exact basis for computation, and the reserves maintained cover the liability therefor. The State statutes most generally require the maintenance of a reserve to cover each class of this particular kind of insurance, but it is difficult to perceive upon what theory, under the above provision of the taxing law, a corporation or insurance company can expand this privileged deduction to include all the liabilities of the same. Unpaid taxes, unpaid salaries, brokerage, and agents’ commissions are current expenses; they are essentially items of expense *215 in the daily, monthly, and yearly conduct of the company’s business; the amount and date of payment is fixed and determined; they depend for liquidation solely upon the company’s earning capacity as the business progresses. This is the only basis for a contingency with respect thereto, and no State law has been pointed out which requires the maintenance of reservations to secure these payments, especially of stated personal stipends to the agents of the company. Taxes, as a rule, ai’e payable annually. A permanent reserve for their payment is not necessary or required by law, and they are not properly included in the net additions required by law to reserve funds. The statute specifically limits the deduction to sums required by law, not such reservations as business prudence may suggest. The State statutes prescribe the necessary reservations, and the commissioner was within the law in holding fast thereto.
It is not to be supposed that Congress, in providing this specific exemption, intended a wider latitude with reference thereto than the express words of the act clearly designate. The limitation is confined to net additions to reserve funds required by law, and the express provisions of statutory law fix the determining basis. State insurance companies can only act within the provisions of the State statute; so that in any event a firm basis is easily available for the application of the exemption provided in the Federal taxing acts.
It is to be noted in this connection that the commissioner observes any change in the status of State laws and amends his rulings with respect to additions to reserve funds in accord with the same.
The claimant company, in its return for 1909, included in its deductions for net increase to reserve funds required by law but three items, viz, unearned premiums, loss claims, and unpaid liability claims. In 1910 it added to these items a claimed deduction for unpaid taxes and unpaid salaries. In 1911 it added brokerage, etc., and reinsurance due other companies, and in 1912 claimed a total amount of $670,791.89, made up by including a claim for each item specified above. The commissioner’s ridings in his amended returns as to this item we believe to be correct.
*216 The next contention is directly converse of the preceding one.. Net additions to reserve funds are exempt, and if there are no net additions but a decrease in reserve funds, commonly called released reserve, is this amount taxable? In 1912 the claimant company, in its return to the Maryland State Department of Insurance, listed its special reserve for unpaid liability losses as amounting to $1,194,235. In the following year, with reference to this special item, the company stated the amount of $841,983, a decrease of $352,252. The increase in unearned premium reserve for 1913, as stated in claimant’s original return, amounted to $81,784.67, for which amount the company was entitled to an exemption,' leaving a total difference of $270,467.33, less sum required as reserve fund for 1913 over 1912, i. e., the company’s reserve funds required by law were $270,467.33 less in 1913 than in 1912, and hence it became available for other business purposes.
The commissioner has consistently included the total sums of released reserves within the gross income of insurance companies and subjected the same to the excise tax. The claimant company since 1909 have accepted the ruling and made their returns accordingly. The issue is for the first time presented in the present suit.
A reserve fund is necessarily a certain portion of the company’s income; it fluctuates as its volume of business increases or decreases, and it is difficult to trace its creation to the company’s income in any specific year. Nevertheless, it is nothing more or less than the setting aside of certain portions of the company’s assets accumulated during the course of business from its income, in order to secure the payment of certain liabilities incurred. The company receives a premium of $100; $50 of this sum must be reserved under the law to meet the contingency of reinsurance — unearned premium. While the $50 is exempt, it is none the less income. It escapes taxation the year it is exempt, but when the obligations of the policy have been discharged this amount is released from reserve. It becomes in theory and in fact an available asset, free from restrictions, to be used by the company as it may see fit. The Federal taxing act doubtless ex *217 empted net additions to reserve fund upon the theory of their actual reservation, the inability of the company to avail itself of these sums in the transaction of its current business affairs, aside from its specific liabilities upon insurance written, and while the law does not in express terms use the phrase “ released reserves,” we believe the amounts realized are taxable as coming within the general term “ gross income ” for the calendar year from all sources. As was said by Mr. Justice Day in Flint v. Stone Tracy Co., supra:
“ This tax, it is expressly stated, is to be equivalent to one per centum of the entire net income over and above $5,000 received from all sources during the year; this is the measure of the tax explicitly adopted by the statute. The income is not limited to such as is received from property used in the business, strictly speaking, but is expressly declared to be upon the entire net income above $5,000 from all sources, excluding the amounts received as dividends on stock in other corporations, joint stock companies or associations, or insurance companies also subject to the tax. In other words, the tax is imposed upon the doing of business of the character described, and the measure of the tax is to be the income, with the deduction stated, received not only from property used in business, but from every source. This view of the measure of the tax is strengthened when we note that as to organizations under the laws of foreign countries the amount of net income over and above $5,000 includes that received from business transacted and capital invested in the United States, the Territories, Alaska, and the District of Columbia.
“ It is further strengthened when the subsequent sections are considered as to deductions in ascertaining net income and requiring returns from those subject to the act. Under the second paragraph the net income is to be ascertained by certain deductions from the gross amount of income received within the year ‘from all sources’; and the return to be made to the collector of internal revenue under the third section is required to show the gross amount of the income received during the year ‘from all sources.’ The evident purpose is to secure a return of the entire income with certain allowances and deductions which do not suggest a restriction to income derived from property actively engaged in the business. This interpretation of the act, as resting upon the doing of business, is sustained by the reasoning in *218 Spreckles Sugar Refining Co. v. McClain, 192 U. S., 397, in which a special tax measured by the gross receipts of the business of refining oil and sugar was sustained as an excise in respect to the carrying on or doing of such business.”
The sums released from reserve funds can not be said to be exempt as reserve funds, for they no longer retain that character. They have always been part of the gross income and accounted for as such during the years of their accumulation. When released, therefore, they must of necessity have some particular status in the business transactions of the company, and while they do not augment the gross income for the particular year in which they are released, they are in their very essence income, and the statute expressly says “ income from all sources.” If this especial exemption had not been provided, all the funds reserved would have been accounted for in the company’s returns as income received. They are income received but exempt when required to be reserved. When-the requirement of the law has been subserved they then become a part of the gross income for the year in which they are released. This has been the construction given since the passage of the taxing act.
It is apparent from what has been said that the case must be remanded to the general docket for a restatement of amounts due in accord with this opinion. It ought not to be difficult to agree upon a statement of amount. The case in this respect is quite involved, but the parties themselves are in position to ascertain this fact with much more accuracy than the court.
It is ordered that the case be remanded to the general docket for a restatement of amounts due. Thirty days from this date will be allowed for this purpose, after which time the case will be placed upon the trial calendar and finally disposed of.